JANUARY TERM, 1880.    609

Stetler vs. The Chicago & Northwestern R'y Co.

## STETLER vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*May 27 — June 23, 1880.*

*(1)* AMENDMENT: *Variance. (2, 3)* RAILROADS *in Illinois: Running on private track: Injury to employee. (4) Contributory negligence.*

1. Where the evidence admitted without objection showed a case different from that alleged in the complaint, and the questions arising upon that state of the case were fully litigated on the trial: *Held,* that the pleadings might be amended at any time, or the variance disregarded.

2. Neither under sec. 12, art. XI of the constitution of Illinois, nor under sec. 82, ch. 114 of the Revised Statutes of that state (of 1874), is it made the duty of a railroad company to run its cars upon spur tracks owned by other persons, for the purpose of receiving or delivering any other merchandise than *wheat;* and if such duty were imposed, it would still not be the duty of the company to run upon any such track that was not *reasonably safe.*

3. Where the owners of a private railway track occasionally employed by a railroad company for a special use have negligently suffered it to remain in a dangerous condition for such use though trains are run upon it slowly and carefully, the company voluntarily running its trains thereon is liable for an injury to one of its own employees caused proximately by such negligence.

4. The doctrine that contributory negligence, to defeat an action, must be that of the plaintiff or of some person for whose acts he is responsible *(Stetler v. C. & N. W. Railway Co.,* 46 Wis., 497), adhered to.

5. The evidence in this case (for which see the opinion) *held* sufficient to support a finding by the jury that through the negligence of the owner of the private road here in question, it was not reasonably safe for the use made of it by the defendant company; and that plaintiff's injuries, though caused in part by the fault of his coëmployees, were mainly caused by the defective condition of the track.

APPEAL from the Circuit Court for *Sauk* County.

The action is to recover damages for injuries sustained by plaintiff while in the service of the defendant company, alleged to have been caused by its negligence.

The case has been twice tried. It was before this court on a former appeal, and is reported in 46 Wis., 497.

The evidence was substantially the same on both trials. A sufficient statement of the principal facts in the case will be found in that report. Whatever additional statement is required will be found in the opinion of the court.

A special verdict was taken. The following are the questions submitted to the jury and their answers thereto:

"1. Did the negligence or want of ordinary caution of the plaintiff contribute to the accident and injury he complains of? No.

"2. Was or was not the railroad track, at the place and time of the accident, in a condition to be reasonably safe for such use as it was being put to, by running carefully and slowly over it? No.

"3. Did the conductor run the train carefully and slowly, in accordance with the instructions of the train dispatcher, at the time the accident occurred? No.

"4. Had Dole & Co., previous to the accident complained of, used reasonable care in putting the track in a reasonably safe condition for use in moving trains over it to haul out ice, if the trains were run carefully and slowly? No.

"5. Was the railroad in question in a reasonably safe condition to run trains over it, for the backing in of empty cars and hauling out cars loaded with ice, provided the trains had been run slowly and carefully, according to the train dispatcher's directions to Haynor, the conductor in charge? No.

"6. Was the accident complained of caused by the neglect of defendant's employees in charge of the train to run the train carefully and slowly? In part fault of the employees, but mainly fault of condition of track.

"7. Was the track, at the time and place of the accident, in a condition to be reasonably safe for trains to be run and backed carefully and slowly over it? No.

"8. If you say 'No' to the foregoing question, did the unsafe condition of the track directly contribute to the accident and injury? Yes.

"9. If, upon the foregoing finding, the court shall be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? Two thousand eight hundred dollars.

"10. If you find that the track, at the time and place in question, was unsuitable or unsafe for use in running trains over it, if run carefully and slowly according to the instructions of the train dispatcher to Haynor, the conductor in charge, was such unsuitable and unsafe condition attributable to the neglect of Mr. Folsom, who had been employed by Dole & Co. to repair and inspect the track? No."

The court denied motions on behalf of the defendant for a nonsuit, for judgment in its favor on the verdict, and for a new trial, and rendered judgment for the plaintiff for $2,800 and costs. The defendant appealed from the judgment.

*F. J. Lamb* and *L. S. Dixon*, for the appellant:

1. There was no proof which would justify a verdict or finding (if there had been such verdict or finding) that the defendant had not exercised reasonable care and diligence in watching and inspecting the track, and keeping it in suitable repair and condition for the uses to which the company proposed to put it, or in the manner in which it directed the same to be used by its employees. The gist of the action, and the only ground of liability on the part of the company, is its negligence in this particular. *Wedgwood v. R'y Co.*, 41 Wis., 478; *S. C.*, 44 id., 44; *Smith v. R'y Co.*, 42 id., 520; *Bessex v. R'y Co.*, 45 id., 477. The track did not belong to the defendant, but to Dole & Co., whose duty it was primarily to keep it in repair. Conceding the general principle that the defendant would be liable for any negligence of Dole & Co. in this respect, still the fact that the defendant did not own the track but only operated it occasionally should have its influence in determining the question of proper care on its part. Defendant would in such case be exercising reasonable and proper care if it made inquiry and obtained such infor-

mation as would lead a person of ordinary care and prudence to believe that Dole & Co. were performing their duty in the premises. Defendant, therefore, knowing that Mr. Folsom was employed by Dole & Co., that he was competent and skillful, that he had made repairs and was inspecting and watching the track to see that it was kept in safe condition, cannot be charged with negligence in this particular. Even if the defendant was bound itself to see to the condition of the track as if owned and operated by it as a part of its own road, there is no evidence to show a failure to perform that duty. Mr. Folsom, a careful and competent workman, had been employed to see that the track was put and kept in safe and suitable condition for slow and careful running; and he exercised his best skill and judgment, and pronounced it safe and suitable. The jury expressly found, in their answer to the tenth interrogatory, that there was no negligence on the part of Mr. Folsom with respect to the unsuitable or unsafe condition of the track. He stood as the representative of the company in the performance of this duty, and without negligence on his part there could have been no negligence on the part of the company. 2. There is no finding by the jury of negligence on defendant's part with respect to the track in question, or that its faulty condition was attributable to any such negligence. This being the gist of the action, and the verdict being utterly defective in this particular, no judgment could properly be pronounced upon it. 3. The verdict should have been set aside as against the weight of evidence. 4. The verdict should have been set aside as inconsistent with itself. The fourth finding is absolutely inconsistent with the tenth. Dole & Co., having employed a competent workman to put the track in order, who was guilty of no negligence, could not themselves have been guilty of negligence. 5. The negligence of a coëmployee being the promoting cause of the injury, there can be no recovery against the employer, the railroad company. Wood on M. & S., sec. 426; *Allen v. New Gas Co.*, L. R., 1

Ex. D., 251; *Howell v. Landore, etc., Steel Co.*, L. R., 10 Q. B., 62.

. *J. W. Lusk*, for the respondent, contended, *inter alia*, that the rule adopted by this court (46 Wis., 497), that where the negligence of the company is the cause of the injury, the plaintiff's right of recovery cannot be defeated by showing contributory negligence on the part of a coëmployee, is recognized and supported by the following additional authorities: Wood on M. & S., 821, 825; *Matthews v. McDonald*, 3 Macph. (Sc.), 506; *Flike v. R. R. Co.*, 53 N. Y., 555; *Rose v. R. R. Co.*, 58 id., 219; Wharton on Neg., 234.

Lyon, J. 1. The complaint charges that the defendant company owned, possessed and operated the railway upon which the plaintiff was injured, and that it carelessly constructed the railway, and suffered it to go uninspected and to get out of repair and in an unsafe condition, by means whereof the plaintiff was injured. The proof is, that the defendant did not construct the railway, and never owned it, but that it was constructed by Dole & Co. or their grantors, was owned by that firm at the time the plaintiff was injured, and had been owned by them for several years. These facts were proved without objection. The most vital questions litigated on the trial were, whether the railway, at the place of the accident, was in a dangerous condition, and, if so, whether Dole & Co. were chargeable with negligence because of their failure to keep it in proper repair.

As was said in a case very similar in principle *(Flanders v. Cottrell*, 36 Wis., 564), so it must be said in this case, that "under these circumstances it is too well settled to admit of any doubt or controversy, that the pleadings may at any time be amended to conform with the issue really tried, or the variance may be wholly disregarded." This case must be determined, therefore, as though the complaint alleged that Dole

& Co. owned the railway and negligently suffered it to remain in a dangerous condition.

2. On the trial, counsel for defendant read in evidence section 12 of art. XI of the constitution of the state of Illinois of 1874, and section 82, ch. 114, R. S. of that state of 1874. The provision of the constitution is as follows: "Section 12. Railways heretofore constructed, or that may be hereafter constructed, in this state, are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law; and the general assembly shall from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on the different railways in this state."

Section 82 of chapter 114 was first enacted in 1871, and is section 3 of an act entitled "An act regulating the receiving, transportation and delivery of grain by railroad corporations, and defining the duties of such corporations with respect thereto," approved April 25, 1871.   Laws of 1871, p. 636. The section is as follows: "Every railroad corporation which shall receive any grain in bulk for transportation to any place in the state, shall transport and deliver the same to any consignee, elevator, warehouse or place, to whom or which it may be consigned or directed; *provided*, such person, warehouse or place can be reached by any track owned, leased or used, or which can be used, by such corporation; and every such corporation shall permit connections to be made and maintained with its track to and from any and all public warehouses where grain is or may be stored."  .The balance of the section prescribes penalties for violations of its requirements.

It is assumed by one of the learned counsel for the defendant (but upon what ground we are unable to comprehend), that these provisions of the constitution and statutes of Illinois compelled the defendant company to run its trains over

the spur track of Dole & Co., and haul out their ice. We find no such requirement in the provisions quoted. The power to regulate the transportation of persons and property upon railways, and to establish maximum rates therefor, is expressly given to the legislature by the constitution; and undoubtedly the legislature has that power independently of any such provision in the constitution. Indeed, the statute read in evidence was enacted before the adoption of the constitution containing such provision. The statute relates solely to the transportation of *grain*, and to connections with tracks "to and from any and all public warehouses where *grain* is or may be stored." It imposes no obligations whatever upon railway companies in respect to other kinds of merchandise. It does not require the defendant company to run its trains over the spur track of Dole & Co. for the purpose of hauling out their ice, gathered from Crystal lake. When the company was doing so, at the time the plaintiff was injured, it was acting voluntarily, and not under compulsion of law, as counsel assumed. At least, the evidence fails to show any such compulsion.

We conclude, therefore, that the legal obligations and liability of the defendant are the same in this action as they would be were the defendant to run its trains from Madison to Milwaukee on the track of the Chicago, Milwaukee & St. Paul Railway Company, or between any other points on the track of any other railway company, pursuant to a voluntary agreement with the company owning the track so used. But were there a statute in Illinois requiring railway companies to run their trains over spur tracks not owned by them, for the purpose of receiving and delivering general merchandise, we do not think it would affect the defendant's liability in this action. We suppose the courts of that state would hold that such a statute, if one existed, would not be construed to compel a railway company to run its trains upon a track unfit for use. Indeed, we do not suppose there is a court in any civilized country which would hold otherwise. This construction

would impose upon the company the duty of inspecting the track it might be called upon to use, and ascertaining for itself whether trains could be safely run upon it. Should the company use it without such inspection it would act at its peril, and if the track should prove unsafe, and a proper inspection would have disclosed the fact, the company would still be held to have run its trains upon it voluntarily, and would be liable for injuries caused thereby, the same as though no such statute existed.

In this case, it does not appear that the defendant company inspected the track, or caused it to be done, before running its trains upon it. The company trusted entirely to Dole & Co. to furnish a safe track for its use. Folsom, who examined and made some repairs thereon, was employed by Dole & Co., and reported to that firm — not to the company. · The fact that recently before that time he was employed by the company, is without significance, except as it may tend to show that he was a competent expert, which is not questioned. Hence, in any view of the case, the defendant was voluntarily running the train upon the spur track of Dole & Co. when the plaintiff was injured.

3. We are next to determine the extent of the defendant's liability when using the track of Dole & Co. in the manner and under the circumstances in which it was so used. In the opinion of Mr. Justice TAYLOR on the former appeal, this court adopted the rule stated in 2 Redfield on Railways, 303, as follows: "The rule of law in regard to passenger carriers who run over other roads than their own, seems now to be pretty well established, that the first company is responsible for the entire route, and must take the risk of the negligence of the employees of the other companies."

This rule was held to apply as between the railroad company and its employees. Of course, in applying it to a case between company and employee, other legal rules applicable in such a case are not to be lost sight of. One of these is,

that the master is not an absolute insurer of the safety of his servant. He is bound to exercise reasonable care in furnishing proper tools, implements and appliances for the use of the servant, and must not knowingly expose him to unnecessary peril. Another of these rules is, that the master is not liable for injuries to his servant caused by the negligence of the co-employees of the latter. Perhaps this last rule would extend to the negligence of the employees of the owner of the road being used by another company. But it is unnecessary in this case to determine whether the defendant would be liable to the plaintiff, its servant, for the results of the negligence of the servants of Dole & Co.; for the reason that the negligence here complained of is that of Dole & Co. themselves — not of their servants. The court did not intend to deny the applicability of the above rules to the case. Although this may not be very fully expressed, yet we think it may fairly be inferred from the whole opinion.

The rule of this case is, therefore, that if Dole & Co. negligently suffered and allowed the spur track to be and remain out of repair and in a dangerous condition for the use to which it was put, although the trains were run upon it carefully and slowly, the defendant, by voluntarily running its trains upon it, became responsible for the negligence of Dole & Co.; and if such negligence of Dole & Co. was the proximate cause of the injuries received by the plaintiff, he may recover damages therefor in this action, unless there is some other fact in the case which will defeat a recovery. In the answers of the jury to the second, fifth and seventh questions submitted to them, they found that the track, at the place and time the plaintiff was injured, was not in a reasonably safe condition for trains running carefully and slowly to pass over. In answer to the fourth question the jury found that up to the time of the accident Dole & Co. had failed to use reasonable care to put the track in a reasonably safe condition for the passage of trains moving carefully and slowly over it to haul out their ice.

These findings are verities in the case if there is evidence to support them. That they are abundantly supported and justified by the evidence we cannot doubt. The track of Dole & Co. had been laid sixteen or eighteen years when the accident happened. At that time the rails rested on hemlock ties, and the proof is that such ties rot in about five or six years. There is no evidence when they were laid, or that the original ties had ever been replaced by others. Dole & Co. employed a Mr. Folsom to inspect and repair the track, and he entered upon those duties about twenty days before the accident. This was in midwinter, and the ground was frozen. At the place of the accident he found two short rails, one of which was broken at the end so that it did not sit firmly in the chair. He also found ties loosed and sunk away from the rail, indicating that they had rotted from beneath. He drove wedges under the ties, or between the ties and rail, so that the rail might rest more firmly on its bed. He could not replace the rotten ties because the ground was frozen, and he did not replace the defective rail because he had nothing to do it with. He reported daily to the superintendent of Dole & Co., and after repairing the track he pronounced it *tolerably* safe for use while the earth remained frozen.

The accident was caused by the rails spreading apart, which threw the locomotive and the tender, on which plaintiff was at work as a fireman, from the track. The road-bed was constructed of the earth thrown up from the prairie through which the road was built, and was only about seven feet wide on the top. The ties were eight feet long, and necessarily projected over the top of the road-bed. The two short rails and the ties were torn up, the ends of some of the ties were broken by the locomotive passing over them, and the spikes were either pulled out or bent over. Many of the ties were found to be entirely rotted away, except a mere shell of sound wood at the surface, and after the accident they were loosened with a pick and thrown out with a shovel. These ties were

entirely insufficient to hold the spikes. The foregoing facts· were testified to in substance by Mr. Folsom, whose business is that of a track repairer, and who appears to be a competent expert in that business. His testimony is practically uncontradicted. That the track was grossly insufficient when he first examined it, and utterly unsafe for trains to run upon, no matter how carefully, is too plain for discussion.

Mr. Folsom made such repairs as the means at his command and the state of the ground would permit. He thinks he made the track *tolerably* safe for use while the ground remained frozen. Perhaps he did. After he repaired it, many trains ran over it safely before one was wrecked. A large percentage of the chances was therefore in favor of safety, and that is probably what Mr. Folsom means by the term "tolerably safe." But that is not the reasonably safe condition required by law. "Tolerably safe" and "actually dangerous" are not necessarily conflicting terms; indeed, the former frequently, perhaps usually, implies the latter. To illustrate: it is a dangerous act to stand on the brink of Table Rock and gaze into the turbulent waters of the Niagara; yet, because hundreds of thousands of people have done so safely and only a few have been precipitated into the abyss beneath, the act is tolerably safe. The defects in the track and its unsafe condition must have been known to Dole & Co. long before they sent Folsom to inspect and repair it. At least, they are chargeable with knowledge of such defects. If a rail is damaged so that it does not sit firmly in the chair which should hold the end in place, or when ties are so rotten that they shrink away from the rail· and become loose, it does not require much of an expert to discover such defects. But if an expert was required to discover the defects, then it was the duty of Dole & Co. to have sent one to examine their road long before they did. Most of the defects which rendered the road unsafe were of long standing. This is especially true of the rotten ties, the most serious defect of all. The advanced

stage of decomposition in which they were found at the time of the accident, shows that they must necessarily have been in an unsafe condition for a long time previously.

If Dole & Co. intended to use their road during the winter, it was their plain duty to have ascertained and repaired the defects therein while the ground was in a condition to permit them to do so. Any necessary repairs which it was impracticable to make after the ground was frozen, they should have made before it became frozen. Their failure to do so was negligence. It is unnecessary further to discuss this branch of the case. We think the evidence tends to show that, when the plaintiff was injured, the spur track of Dole & Co. was in an unsafe condition to run a train upon, no matter how carefully and slowly it might be moved, and that Dole & Co. were guilty of gross negligence in that they suffered it to become and remain in that condition. It follows that the findings of the jury in those particulars cannot be disturbed.

In this connection it will be convenient to consider an exception to a portion of the charge of the learned circuit judge to the jury. When commenting upon the question submitted to them in respect to the alleged negligence of the plaintiff's co-employee, the judge instructed the jury as follows: " In arriving at a conclusion as to whether the train was or was not being run carefully and slowly, or being backed carefully and slowly, you should consider the evidence tending to show what is and what is not careful and slow running on roads in ordinary condition, or backing as this train was, with the number of cars it contained."

It is said that this instruction ignores the fact that the road was used only for a special purpose, and was not required to be kept in the condition of main lines of railway used for passenger travel, and that the reference in the instruction to such lines tended to mislead the jury.

For the purpose of showing that the plaintiff was injured because of the negligence of his coëmployee, evidence was

introduced on behalf of the defendant tending to show the rate of speed deemed safe in backing and running trains on railroads generally. The instruction merely suggests the comparison, the foundation of which had been laid by the defendant's evidence. The jury were not told that what would be careful running on main lines would be careful running on this spur track, but the judge merely submitted the defendant's testimony in that behalf to the jury for what it was worth. The instruction might have been more explicit, and no doubt would have been, had counsel for the defendant requested it. We do not think it is erroneous in its present form.

It will also be convenient to add here (as the subject will not again be mentioned) that the other exceptions to the instructions do not involve any material proposition of law which is not elsewhere in this opinion considered and passed upon. Hence, it is quite unnecessary to discuss such exceptions.

4. The findings that neither the plaintiff nor Folsom was guilty of any negligence which contributed to the injuries complained of, are fully sustained by the evidence. But it is claimed on behalf of the defendant that the finding acquitting Folsom is inconsistent with that which convicts Dole & Co. of negligence contributing to such injuries. We think the position is not well taken. Folsom doubtless did all he reasonably could under the circumstances to repair the track, and was not negligent in that behalf; but, as already observed, the negligence of Dole & Co. consisted in not repairing the track when it was practicable to do so, long before Folsom had anything to do with it.

5. The jury also found that the plaintiff's injuries were caused in part by the fault of his coëmployees on the train, but mainly by the defective and unsafe condition of the track. We think the evidence fairly supports this finding.

Notwithstanding what was said on that subject in the opinion by Mr. Justice TAYLOR on the former appeal, the learned counsel for the defendant strongly contend that, under the

circumstances of this case, the contributory negligence of such coëmployees should defeat the action. After much examination we held, on the former appeal (or, as it is put in the opinion, were inclined to hold), that "where the negligence of the railroad company directly contributes to the injury of an employee, the company must be held liable, though it also appears that the negligence of a coëmployee contributed to such injury, and that the rule is universal that contributory negligence, to defeat an action, must be the negligence of the plaintiff, or some other person for whose acts he is responsible." This is but an application of the very familiar rule, that for a wrong jointly committed by several, all or either of the wrong-doërs are liable to respond in damages. Several additional authorities sustaining the views of the court on the former appeal are cited in the brief of counsel for the plaintiff. Whatever inferences to the contrary may be drawn from some of the cases cited by the other side, we are satisfied that those views are sustained by the great weight of authority, as well as by settled principles of law. It must be held, therefore, that this action is not defeated because the negligence of his coëmployees contributed to cause the injuries of which the plaintiff complains.

6. The only remaining question is, Did the jury assess excessive damages? On the first trial the evidence left it in doubt whether the plaintiff was permanently injured. The jury then assessed $2,500 damages. When the last trial was in progress, the plaintiff was rendered insensible by some anæsthetic administered to him, and in that condition was examined by several surgeons who were in attendance as witnesses on behalf of one side or the other. After such examination the surgeons all agreed that the rotary motion of one of the plaintiff's arms was destroyed, and that the disability is permanent.

The plaintiff is a laborer, has a family to support, and was earning $45 per month when injured. His capacity to labor and earn money is greatly lessened by the condition of his

arm. The jury awarded $2,800 damages. We do not think that sum is excessive.

After a careful examination of the case we find no material error disclosed in the record. The judgment of the circuit court must therefore be affirmed.

*By the Court.*— Judgment affirmed.