## WECHSELBERG v. FLOUR CITY NAT. BANK.

### (Circuit Court of Appeals, Seventh Circuit. October 27, 1894.)

#### No. 105.

1. CORPORATION—ATTEMPT TO FORM—LIABILITY OF CORPORATORS AT COMMON LAW—WISCONSIN STATUTE.

Rev. St. Wis. tit. 19, c. 86, §§ 1771–1775, provide that three or more persons may form a corporation by signing and acknowledging written articles declaring the purpose, amount of capital stock, and other particulars regarding the corporation, which articles must be filed for record in certain public offices, and "no corporation shall, until such articles be so left for record, have legal existence"; that in stock corporations stockholders only shall be members; that, until directors are elected, the signers of the articles shall have direction of the affairs of the corporation, and make rules for perfecting organization and regulating subscriptions to stock; that "no such corporation shall transact business with any other than its members" until one-half of its capital has been subscribed, and 20 per cent. paid in, and upon any obligation contracted in violation of such provision the corporation shall have no right of action, but the stockholders then existing shall be personally liable; and finally, that "every such corporation, when so organized," shall be a body corporate, and have the powers of a corporation. Where W., with two others, had signed and acknowledged articles, pursuant to this statute, which were duly filed and recorded, but no further proceedings were taken, and no stock subscribed for or issued, and no capital paid in, but the other parties, with W.'s knowledge, but without his participation, proceeded to transact business as a corporation and incur obligations as such, *held,* in an action against the signers of the articles, including W., upon a note executed in the corporate name, that it was the purpose of the statute that a qualified corporate existence only should date from the filing of the articles, but that the full privileges of incorporation, including exemption of the members from liability, should be withheld until capital stock was provided, and that, until compliance with the statutory requirements as to providing such stock, the signers of the articles, including W., were liable at common law for the debts incurred in the name of the corporation. Woods, Circuit Judge, dissenting.

2. SAME—NATURE OF LIABILITY.

*Held,* further, that such liability was a primary, contract liability of the signers of the articles, and was not dependent upon the knowledge or understanding of those dealing with the purported corporation, nor upon the personal participation of such signers in the transaction of business, nor upon their deriving any profit from it. Woods, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

Action by the Flour City National Bank against Julius Wechselberg, Ernest S. Moe, and Charles H. Williams. Plaintiff obtained judgment. Defendant Wechselberg brings error.

This is an action at law by the Flour City National Bank against Julius Wechselberg (plaintiff in error). Ernest S. Moe, and Charles H. Williams, as defendants below, for recovery of the amount due upon a promissory note for $3,000, dated September 18, 1889, made by the Northwestern Collection Company to the Northwestern Collection, Loan & Trust Association, and indorsed to said bank. The alleged liability of the defendants below is based upon their acts in the incorporation of the Northwestern Collection Company as a corporation under the laws of Wisconsin, and the transaction at large of business thereunder, without having capital paid in as required by statute, whereby it is asserted that they became personally obligated to

pay indebtedness so contracted. The complaint alleges facts to state a liability created by the statute of Wisconsin, viz. section 1773, c. 86, which is the act providing for incorporations; and also charges that the defendants are liable "personally and as copartners in trade upon the obligations so contracted." Demurrer to the complaint was overruled (45 Fed. 547), and the defendants answered severally. The issues were tried before the court upon stipulation waiving a jury, and there were findings of fact and conclusions of law thereupon against all of the defendants; but Wechselberg alone sues out a writ of error.

The facts found, aside from jurisdictional and formal matters, may be summarized as follows (the portions to which exception is taken being placed in brackets), viz.:

On April 6, 1888, the plaintiff in error, with the other two defendants below, executed articles of incorporation forming the Northwestern Collection Company of Milwaukee as a corporation to do a general collection and reporting business, with capital stock fixed at $5,000, divided into shares of $25 each. These articles were duly filed and recorded as required by the statute; contained the required provisions, named the general officers to be elected by and from a board of three directors, stated their duties, and provided that any person might become a member or stockholder by subscribing to and becoming the owner of one share of stock, and, further, that "the corporators should compose the first board of directors." Certificate of incorporation was thereupon issued by the secretary of state, but no further steps were taken by any of the defendants to comply with the statutory requirements, no by-laws were adopted, no stock certificates issued or arranged for, and no stock was ever subscribed for or paid in by the defendants or any other person, and the noncompliance was known by each of the defendants. The defendants Moe and Williams, assuming to be president and secretary, respectively, of the corporation, immediately began to carry on a general collection business at Milwaukee, under this corporate name; and they, in the course of their said business, caused to be printed letter heads and business cards with statement of incorporation, and their names and offices as aforesaid, including therein the name of Julius Wechselberg as vice president, all of which were used and distributed during a year and a half of their operations. The plaintiff in error "knew all the time that Moe and Williams were carrying on said business in the name of said corporation." He took no part in the management ["but did not at any time, disavow his connection with the said corporation as incorporator, officer, or stockholder, until after the commencement of this action"]. He never received any profit or emolument from it, and "the evidence does not establish that he had actual knowledge that his name was used upon the letter heads," or that he was held out as an officer of the company; but ["under the circumstances, if he did not know it, he could have ascertained the fact by merely slight attention to the matter, and was guilty of negligence in not knowing it, having become a party to the incorporation, and knowing that the business was being carried on in the name of the incorporation by the other defendants, and consenting thereto, when no capital stock had been subscribed or paid in to his knowledge or in fact, as he was bound to know, he cannot shield himself from liability by reason of his negligent ignorance of the use of his name; and by uniting in the incorporation, and permitting and consenting to the transaction of business by and in the name of the incorporation without stock subscription or payment of any part of a stock subscription, he made himself liable for all debts lawfully contracted in the name of the incorporation"]. It is further found that the public representation of Wechselberg as vice president of this corporation was made known to the payee in the note in suit prior to the contracting of the debt for which it was given in renewal, but is not shown to have been known by plaintiff below until after the maturity of the renewal note. Also that the purported corporation made collections for and had active business connection with the corporation named as payee in said note, in which drafts were frequently drawn by the latter upon the former, and accepted and discounted through plaintiff bank. The note in suit was in renewal of one of these drafts so discounted, drawn September 11, 1889, and is a transaction of this purported corporation.

The corporation was wholly without capital or resources out of which to pay this debt. Both the payee and its assignee were ignorant of this want of capital and of noncompliance with any of the statutory requirements. The exceptions and assignments of error are directed to the portions of the findings of fact which are above quoted in brackets, and to each of the conclusions of law and the judgment.

Quarles, Spence & Quarles (Chas. Quarles, of counsel), for plaintiff in error.

Shepard, Haring & Frost and Wilson Vanderlip (Edward W. Frost and John R. Vanderlip, of counsel), for defendant in error.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

SEAMAN, District Judge (after stating the facts as above). The plaintiff in error was held by the circuit court to be jointly liable with the other defendants below for the indebtedness contracted by their assumed corporation, the Northwestern Collection Company, in the absence of any capital stock. This liability was based upon the facts found in his relation and conduct as a corporator, and the court did not undertake to determine at the trial whether it arose under the statute or at common law. Corporations are entirely the creatures of statute, and, when duly formed, one of their chief characteristics, distinguishing them from partnerships and other joint ventures, is the exemption of the individual associates from liability for the corporate obligations, except as the enabling act may impose liability. This immunity, which is an important advantage of membership, can only be secured by compliance with the statutory requirements for incorporation. In the case of corporations organized for a purpose and under a law requiring capital stock, the capital becomes a fund to which creditors must look for satisfaction of debts. It is a substitute for individual liability, and constitutes a trust fund for the benefit of creditors. Upton v. Tribilcock, 91 U. S. 45; Adler v. Manufacturing Co., 13 Wis. 57; 1 Beach, Priv. Corp. § 116. Capital stock is, therefore, the vital requirement of every business corporation, and its actual existence is usually placed by enabling statutes as a condition precedent to corporate existence. It is found and conceded in this case that there was no capital stock in fact, and no capital paid in or subscribed; that the articles of incorporation which were entered into by the plaintiff in error with the other defendants below prescribed $5,000; that these articles were duly executed by the three parties, and duly filed and recorded; that without capital, and without the actual taking of any further steps towards organization, business was opened by Moe and Williams as actors, in the name of the assumed corporation; that this was known to the plaintiff in error, but he did not take part in their operations, or receive any profit or emolument; that printed matter was used and distributed, wherein the plaintiff in error was named as vice president, and, while "the evidence does not establish that he had actual knowledge" of this use of his name, it is found that "under the circumstances, if he did not know it,

he could have ascertained the fact by merely slight attention to the matter, and was guilty of negligence in not knowing it." Futhermore, it is recited in the articles which were entered into that "the corporators should compose the first board of directors"; and, although such a provision would not control an organization effected by stockholders, who are empowered by the statute to elect directors, it may be considered as a fact tending to show intention or knowledge. The debt in question was incurred in the business so carried on, and in the line apparently contemplated by the articles.

The statute which authorizes incorporation for the purposes stated in these articles is chapter 86, tit. 19, of the Revised Statutes of Wisconsin, contained, with amendments, in 1 Sanb. & B. Ann. St. c. 86. Section 1771 provides that "three or more adult persons, residents of this state, may form a corporation in the manner provided in this chapter," for objects there named. Section 1772 provides: "In order to form such a corporation, the persons desiring so to do shall make, sign and acknowledge written articles," with declarations of (1) purpose, (2) name and location, (3) capital stock, if any, and number and amount of shares thereof, (4) designation of general officers and number of directors, (5) duties of officers, (6) conditions of membership, and (7) "such other provisions or articles, if any, not inconsistent with law, as they may deem proper." The section further provides: The original articles, or a verified copy, must be filed for record with the register of deeds of the county, "and no corporation shall, until such articles be so left for record, have legal existence." It also declares that "in stock corporation, persons holding stock, according to the regulations of the corporation, and they only, shall be members." A verified copy of the articles must also be filed with the secretary of state, or penalty is incurred. There was in this case formal compliance with the foregoing requirements, but entire failure to complete incorporation under the succeeding section. By section 1773 it is prescribed that until directors are elected the signers of the articles shall "have direction of the affairs of the corporation, and make such rules as may be necessary for perfecting its organization. accepting members or regulating the subscription to the capital stock"; that in stock corporations the first meeting may be held when half the capital stock is subscribed, and may be called by any two of the signers of the articles, upon certain notice, or be held without notice when all subscribers for stock are present. It then further provides: "No such corporation shall transact business with any other than its members, until at least one-half of its capital shall have been duly subscribed, and at least twenty per centum thereof actually paid in; and if any obligation shall be contracted in violation hereof, the corporation offending shall have no right of action thereon; but the stockholders then existing of such corporation shall be personally liable upon the same." Section 1775 declares: "Every such corporation, when so organized, shall be a body corporate," and have "the powers of a corporation conferred by these statutes," etc.

The question of common-law liability presents itself at the threshold of this inquiry, whether considered as a primary ground or for the purpose of interpreting the statute. As a primary ground, the plaintiff in error contends that it must be excluded here for two reasons: (1) Because the complaint is manifestly based upon the statute, and intends a charge of statutory liability; and (2) because there is a finding by the trial court of the existence of incorporation. It is sufficient answer to the first objection that it is raised here in the first instance; that the evidence was all received without exception for variance, and the facts are clearly established by the findings. Under the rule stated in Wasatch Min. Co. v. Crescent Min. Co., 148 U. S. 293, 13 Sup. Ct. 600, approving the rule pronounced under the New York Code of Procedure in Tyng v. Warehouse Co., 58 N. Y. 308, the objection cannot now stand "to shut out from consideration the case as proved." In Wisconsin, section 2669, Rev. St., provides that "no variance between the allegation in a pleading and the proofs shall be deemed material unless it shall actually mislead." and the decisions under it, in accord with the doctrine above stated, hold that "the variance may be wholly disregarded," and that "the pleadings may at any time be amended to conform with the issues really tried," or will be regarded on appeal as so amended. Stetler v. Railway Co., 49 Wis. 609, 6 N. W. 303. With reference to the force of the finding, all of the facts are clearly stated, and it remains for the court of review to determine their legal effect. An expression of opinion by the trial court has suggestive value, but is not conclusive, where the facts are undisputed. The case is therefore open for any liability which may result from the facts established, and the only question on the writ of error is, do the facts found support the judgment?

By the common law there was no individual liability of the members of a corporation for corporate debts, beyond the enforcement of their agreed contributions to the capital stock. Terry v. Little, 101 U. S. 216; U. S. v. Knox, 102 U. S. 422; 1 Beach, Priv. Corp. § 143. Therefore, if complete corporate existence was obtained and perfected by the act of filing the articles of association, without compliance with any of the requirements of section 1773, the associates are not subject to common-law liability. On the other hand, it is well settled that an attempted or pretended incorporation, not perfected as the enabling act requires, does not confer this immunity, and all who are parties to the simulated corporation as associates or shareholders are held liable at common law for debts contracted under the corporate guise. While the courts have differed in naming this liability,—whether in the nature of copartners or resting "upon the ordinary principles of contract and agency" or upon fraud,—they agree in holding liable in some form all who are engaged in the defective corporate enterprise. Fuller v. Rowe, 57 N. Y. 23; Pettis v. Atkins, 60 Ill. 454; Hill v. Beach, 12 N. J. Eq. 31; Coleman v. Coleman, 78 Ind. 344; Abbot v. Smelting Co., 4 Neb. 416; Kaiser v. Bank, 56 Iowa, 104, 8 N. W. 772; Lawler v. Murphy, 58 Conn. 313, 20 Atl. 457; Johnson v. Corser, 34 Minn. 355, 25 N.

W. 799; Hospes v. Car Co., 48 Minn. 174, 50 N. W. 1117. This statute does not, in terms, declare that compliance with section 1773 shall be a condition precedent to corporate existence. If there were a decision by the supreme court of Wisconsin construing the statute with reference to the time or event in the proceeding upon which incorporation is perfected, that construction would be controlling; but the only case called to our attention in that view is Harrod v. Hamer, 32 Wis. 162. That arose under a previous act (chapter 73, Rev. St. 1858), which differs essentially from the instant statute in its method of incorporation, and in the status of the incorporators (who are thereby constituted stockholders), and therefore is not applicable here. The statute must be considered in its entirety to ascertain its meaning, and that exposition ought to be adopted, as stated by Mr. Justice Story, in Minor v. Bank, 1 Pet. 46, "which carries into effect the true intent and object of the legislature in the enactment." The purpose is clear that corporate being shall be dated from and conferred through the act of filing the executed articles of incorporation for record as one of the conditions precedent; but, while the statute refers to it as a corporation at that stage, a limitation is added that it shall not exercise corporate functions, viz. "the transaction of business with any others than its members," until it shall have provided capital stock in conformity with section 1773. Such is the view recognized in Mining Co. v. Sherman, 74 Wis. 226, 42 N. W. 226, where it is said that this statute "provides for the preliminary organization of the corporation, and then limits its power to enter upon its general business," by section 1773. The corporation has obtained the right to exist, but can only be said to have existence in a qualified sense, for it is not possessed of the attributes or privileges of perfected incorporation; and section 1775, which declares these powers and privileges, vests them only when organized as required by the preceding sections. A quotation from the brief of one of the learned counsel for the plaintiff in error (arguing against liability as a stockholder) well defines this embryonic status, and is adopted here. It reads (including italics) as follows: "The truth is that *no corporation was formed* except in a very limited and qualified sense. It is true the statute uses the word 'corporation.' It is, however, a bare, legal entity, which through *organization* may become a corporation, having members, and capable of transacting business. * * * It may be likened to the hull of a ship, without rudder or masts or gearings." The public are authorized to treat it as a corporation from the recording of the articles, and may look to the recorded articles for its purposes and objects. Compliance with section 1773 is imposed upon the corporators in the first instance, and when they have provided for stockholders the duty devolves upon the latter, whose action is matter only of corporate record, and not of general public record. Until that provision of capital is furnished as a fund to take the place of personal liability, the intention is apparent to withhold the special privilege of complete incorporation which exempts the members from such liability. The inhibition is, in effect, against any transactions except

such as tend to organization,—i. e. perfecting incorporation,—and the purpose is to protect those who may be imposed upon by premature assumption of corporate functions, and not to save the corporation or its projectors from just liability. Mining Co. v. Sherman, supra. This is not like the technical requirement placed by a Michigan statute upon the officers to file their articles of association in a certain place,—simply forbidding business until compliance, without declaring any effect for noncompliance,—of which it was held in Whitney v. Wyman, 101 U. S. 392, that the provision was not made a condition precedent to incorporation; and it is not like the technical requirement found in the former Wisconsin statute that the officers should file a certificate of incorporation before transacting business, held in Harrod v. Hamer, supra, not a condition precedent; but the demand here is of the very essence of incorporation,—that there shall be capital stock and stockholders. A corporation cannot come into existence without members, and stockholders are the only members of a stock corporation.

In the light of the evident purposes of this enactment and of these distinctions, and considering that the requirements imposed by section 1773 are of the essence of corporate organization, and are followed by the declaration, in section 1775, of complete incorporation "when so organized," we are of the opinion that it was the legislative intent that full effect as a corporation should not obtain until compliance, and that the common-law liability is preserved up to that event. While section 1773 provides that any obligations contracted before compliance shall not give a right of action to the corporation, "but the stockholders then existing" shall be personally liable, this imposition is not in derogation of the common law, but is rather declaratory of or supplements it. Even as a statutory liability, it may be remarked in passing, that this is not penal in its nature, and does not call for the strict construction which is claimed in another branch of the argument for the plaintiff in error, but it is one of contract, which the members take upon themselves in forming a corporation, and is primary and absolute. Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263; Coleman v. White, 14 Wis. 700; Day v. Vinson, 78 Wis. 198, 47 N. W. 269. For the consideration here the statute must be taken in its entirety, as an enactment granting privileges. When privilege is asserted under it, the interpretation of the statutory prerequisites should be reasonable, and the legislative intent should be given effect, and not thwarted.

So construed, the parties who entered into the assumed corporate undertaking will be held to liability for obligations which have been incurred under that assumption. Is the plaintiff in error within that rule? He executed the agreement or articles by which he engaged with the other defendants "to form a corporation" which should have a capital stock of $5,000. He was party to every step which was taken under the statute. Without his participation (or some third party), even the semblance of corporate existence could not have been obtained for the venture. This act, followed by the filing of the instrument, was a solemn acceptance, by the parties jointly, of the privileges of incorporation. In the argument for

plaintiff in error it is insisted that these corporators are merely nominal parties, and should not be regarded as contractors in any sense; that it has become common practice to take, for the time being, any persons who may be convenient for the purpose, leaving the real projectors to come in with the subscription for stock. Such view or practice is entirely foreign to the manifest intent of the statute, as the organization is placed entirely within control of the signers, and without their action to that end strangers cannot obtain admission as stockholders. They occupy a contract relation. It is true that that relation is absolved, or a new one formed, when organization is effected; that the office of corporator disappears when that of stockholder is taken on. It is also true that there may be an abandonment of the venture without any liability resting upon the corporators, but upon the condition imposed by the common law that no obligation shall have been incurred in the name of that relation, viz. by "assuming to act in corporate capacity." Fuller v. Rowe, 57 N. Y. 23. Had these articles read that the signers agreed to form a partnership with $5,000 capital, instead of a corporation, there would have been no doubt of joint liability for contracts entered into by either in the copartnership name and within its scope. The agreement here is to form a corporation, with capital stock of $5,000. It is made a public record as the statute requires. So far as the public is concerned, this record is the only evidence of incorporation which comes to notice. The corporate capacity there promised was forthwith assumed, as the plaintiff in error well knew; and he cannot be heard to evade liability upon the plea that they failed to put in the capital and perfect organization. McHose v. Wheeler, 45 Pa. St. 40. In behalf of the plaintiff in error it is the contention that he is not liable, because he did not participate in the business which was undertaken, and it is not found that he had actual knowledge of the use of his name as an officer. But it is found that "under the circumstances, if he did not know it, he could have ascertained the fact by merely slight attention to the matter, and was guilty of negligence in not knowing it." This impures knowledge. If he remained ignorant of the use of his name in the face of such circumstances,—where he had given its use for the inception of the enterprise, and where slight attention would have brought him knowledge,—he is chargeable with notice. The culpable negligence bars the excuse of ignorance.

Upon this record all of the signers of the articles of incorporation have made themselves parties to the assumption of corporate powers, and they are jointly bound for the indebtedness which was therein contracted. Their liability is of the same nature which would be imposed if the original plan had been to form a partnership. Cook, Stock & S. § 235. The agreement which gave color to the assumed corporate action is the foundation. The reason for holding the liability is well stated in Fredendall v. Taylor, 26 Wis. 286, as springing "from the fact that there was no responsible body or corporation behind them." Having no principal, they bound themselves individually. Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911, is to the same effect.

It is not essential that parties dealing with the assumed corporation should have acted with knowledge or upon the faith of his relations. The rule stated in Thompson v. Bank, 111 U. S. 529, 4 Sup. Ct. 689, is not applicable. There it was sought to recover upon a copartnership debt from one who was not a partner in fact, but had been held out as such, without credit being given on the faith or with knowledge of such holding out. Recovery was denied, because there was no contract relation, and no ground for estoppel. In the case at bar there is primary contract liability, and it is not dependent upon the knowledge or understanding of those dealing with the purported corporation. Pullman v. Upton, 96 U. S. 328, citing Adderly v. Storm, 6 Hill, 624; Pierce v. Bryant, 5 Allen, 91. In view of this determination of liability at common law, we are of opinion that judgment was properly entered against the plaintiff in error; and it is unnecessary to consider the question of statutory liability, which is well presented in the briefs and oral arguments. The judgment will be affirmed.

WOODS, Circuit Judge (dissenting). In considering whether a special finding of facts sustains a judgment it is to be remembered that all matters in respect to which the finding is silent are to be regarded as if expressly found against the party upon whom was the burden of proof. Of the two theories advanced in support of the judgment here in question, that of statutory liability was mainly relied upon at the argument, and apparently when the declaration was drawn. In support of that view it was insisted upon the authority of Hawes v. Petroleum Co., 101 Mass. 385, that until the shares of stock had been taken by individuals, the incorporators of the company were the holders in common of the entire capital stock, and, not having paid in the required 20 per centum thereof, were personally liable, under the statute, upon the corporate contracts. There is, however, an essential difference between the statute of Massachusetts, under which that decision was made, and the statute of Wisconsin, with which we are now concerned. Under the latter there are two distinct stages in the process of incorporation. The first consists in the execution and recording of articles, signed by corporators, who may or may not become members or shareholders, while the second stage is complete only when subscribers have taken and paid 20 per cent. of the par value of one-half or more of the capital stock, and of their own number have chosen directors and other officers; it being expressly provided that "persons holding stock, and they only, shall be members." Under the Massachusetts statute—and, indeed, under statutes of Wisconsin concerning the formation of certain classes of corporations—there is no such distinction between a mere corporator and a member or shareholder of the body. In the case referred to, the articles of incorporation of the Anglo-Saxon Petroleum Company, it is to be observed, provided for stock in an aggregate amount, without division into shares, and, speaking with reference to that fact, the court said: "The stock not having been divided into shares or certificates issued, the associated members of the corporation were holders of the

whole capital stock in common; and, it would seem, upon the facts, agreed to be liable in equal proportions for such sum as may be decreed to be paid by them in this suit." In the case before us, Moe and Williams, by letter heads and otherwise, had represented themselves to be officers of the company, which they could not be unless they were stockholders, and were therefore estopped to deny the fact of membership which made them responsible under the statute. But the plaintiff in error was not a stockholder in fact, and he is not found to have done or to have authorized the doing of anything whereby he is estopped. The only fact in the case that can be regarded as tending to show his consent that Moe and Williams should use his name is the provision in the articles of incorporation that the corporators should compose the first board of directors. But it was not competent, under the statute, to choose or appoint directors in that way, and the provision can fairly be said to signify no more than an understanding between the signers of the articles at the time of signing that when, if ever, they should complete the corporate organization by taking and paying for stock, they would elect themselves directors. If this provision "may be considered as a fact tending to show intention or knowledge," it is immaterial in a special finding, where the statement of ultimate facts only, and not of evidence, has significance. The record, however, leaves room for no question upon this point. Instead of showing affirmatively that the name of the plaintiff in error was used with his authority, the finding is express that "the evidence does not establish that he had actual knowledge that his name was used." The added statement, in the finding, "that under the circumstances, if he did not know it, he could have ascertained the fact by merely slight attention to the matter, and was guilty of negligence in not knowing it," is, I think, immaterial for the purpose of establishing liability either under the statute or by contract. The statutory liability is declared against stockholders only, and as the plaintiff in error was not a stockholder, either in fact or by estoppel, the judgment against him cannot rest upon that basis.

There is, in my opinion, no better support for the judgment on the theory of common-law liability. Wechselberg was not in fact a copartner of Moe and Williams in the business which they were doing, and I know of no principle or decision which would make him responsible for their acts or contracts, either severally or as a joint obligor. The opinion of the court, as I understand it, rests his responsibility ultimately upon the mere fact that he and they were the signers of the recorded articles of incorporation of the company in whose name they conducted business and executed the obligation sued on. But between his act of signing the articles and his supposed responsibility for the acts of the other signers done in the corporate name, before it was lawful so to use that name, there seems to me to be neither legal nor logical connection. The statute, it is agreed, imposes no obligation except upon stockholders; and in the articles of incorporation there is to be found no promise, covenant, or undertaking to be responsible for corporate contracts, whether made before or after complete organization, and

there is no expression or implication of authority given by one corporator to the others to begin or to prosecute business in the corporate name in any mode, or as if it were a partnership name. No such result, it is clear, was intended by the plaintiff in error, and neither in law, equity, nor good morals do I perceive any justification for imposing liability upon him. It is found that he knew that Moe and Williams were doing business in the name of the corporation, without having complied wth the statute; but it is not found that he knew that they were using his name, or that anything came to his notice which ought to have put him on inquiry. He did not, by signing the articles, make the other signers his agents to do anything whatever,—not even to take the steps necessary to perfect the corporate organization. Having no stock, he had no legal interest in what was done in that direction; and if the other signers had taken or allowed others to take the entire stock, to his exclusion, it would have been a breach of no obligation to him. Having no right in any of those particulars to control the course of the other corporators, he was under no duty to the public to look after their conduct. He was, therefore, no more bound to make inquiry concerning what had been or was proposed to be done than were third parties who chose to deal either with the corporation or with Moe and Williams or with others assuming to use the corporate name. Others, as well as he, knew, or were bound to know, the provisions of the statute; and if they dealt with the corporation on the faith of its responsibility, without inquiry on the subject, they are not harmed if they are without recourse upon an individual who had no part in the transaction; and if they supposed that the organization of the corporation was or might be incomplete, and counted upon individual liability, it was equally their duty to know to whom, for that purpose, they might rightfully look. The articles of incorporation, if examined, would have shown that the plaintiff in error was a signer, but as, under the law, it was the right of the other two signers to call a first meeting of stockholders without notice to him, and to complete the organization without his participation, his participation beyond the fact of signing was not to be inferred, except from his own subsequent conduct. A rightful act is no warrant for a wrongful one. The stock book was open, it was to be presumed, to show who, if anybody, were shareholders, and if any one chose to trust to the representations of Moe and Williams rather than to inquire of Wechselberg himself whether his name was used with his consent, he can justly complain only of those who deceived him. Neither the defendant in error nor its assignor dealt with the plaintiff in error, or with others, on the faith of his name, nor were they in any way deceived by him.

The proposition that "all who are parties to the simulated corporation, as associates or shareholders, are held liable at common law for debts contracted under the corporate guise," is more broadly stated than any of the authorities cited in the principal opinion seem to justify. In Fuller v. Rowe, 57 N. Y. 23, for instance, it is held that, in order to charge one as an incorporator or as a partner, "it must be shown that he was so acting at the time the contract sued

on was made, or that upon some consideration he agreed to become liable with the others"; and I believe there is no case in which a subscriber to the articles or to the stock of a corporation, imperfectly organized, has been held personally responsible for contracts made in the corporate name, unless he had had some part in the making of the contract, or an interest in it, which would have bound him independently of his subscription to the articles or stock of the association. It was so held in Rutherford v. Hill, 22 Or. 218, 29 Pac. 546. To the same effect, as I read them, are Fredendall v. Taylor, 26 Wis. 286, and Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911. See, also, Bank v. Palmer, 47 Conn. 443. One may sign an agreement to form a partnership, but if he does not in fact become a member of the firm, nor authorize the use of his name, and has no part or interest in the business, he will not be responsible for the doings or contracts of the other signers of the articles if they pursue the enterprise and incur liabilities in the business and name of the proposed partnership. Thompson v. Bank, 111 U. S. 529, 4 Sup. Ct. 689; Preston v. Foellinger, 24 Fed. 680, and note. And it is difficult to understand how the signer of articles of incorporation, who takes no subsequent action or interest, and does not authorize the use of his name, can be held responsible for corporate contracts on the theory that he was a partner or joint contractor, when, if under the same circumstances he had signed an outright agreement to form a partnership, and thereafter had had no part or interest, he would not be responsible for contracts of his proposed partners in the business which had been agreed upon.

Upon the question of contract liability, the finding that by the use of slight diligence the plaintiff in error could have known of the use which was made of his name is no more relevant or material than upon the question of statutory liability. He gave the use of his name, it is true, "for the inception of the enterprise," but it was for a corporate enterprise, which was lawfully begun; and, the contrary not being found, it must be presumed that he neither intended nor assented to anything afterwards done in violation of the statute in conformity with which the initial steps in which he shared were taken. He was certainly not bound to anticipate, and nothing is shown to have come to his attention which ought to have caused him to suspect, an unauthorized use of his name. No one was misled in respect to his responsibility, and, if there had been, it would not, upon the facts found, have been through his fault. The fundamental error of the contrary view, as I conceive, is in the assumption that a signer of articles of incorporation like those in question owes a duty to the public which compels him, at the risk of personal liability, to prevent the making of contracts in the proposed corporate name without compliance with the statute, or beforehand, in some way not explained or shown to be possible, to disavow responsibility. But if, as it seems to be held, the recorded articles constitute a public statutory notice upon which every dealer will be presumed to have relied as proof of the individual liability of all signers of the articles for such contracts made by a part of the signers or by subscribers to the stock, it would seem clear that no

disavowal of responsibility, however publicly made, could be effective, in the absence of statutory provision therefor, unless shown to have come to the actual knowledge of the party to be affected. The doctrine is not in harmony with the familiar principles of agency which govern when it is sought to make one man responsible for the acts of another, and, if carried to its logical results, will establish in many cases, which need not be further illustrated, a liability on the part of signers of articles of incorporation which will be manifestly unjust, and for which until now I believe there has been no precedent. If the supposed duty of the signer of such articles to protect the public against the wrongs of other signers be rejected as unsound and fallacious, the finding of the court below that "by merely slight attention" the plaintiff in error "could have ascertained" the use which was made of his name, becomes immaterial, and the added inference, or conclusion of law, that he "was guilty of negligence in not knowing it," is without support. Where there is no duty there can be no negligence. It takes more than inattention to create an agency or to constitute fraud. The plaintiff in error, therefore, did not make himself party to "the assumption of corporate powers," and is not bound, either jointly or severally, upon the contracts of those who were guilty of so doing.

If a corporator is subject, under this statute, to the supposed liability, and if, on account of sickness, absence, inattention, or for any reason, he fails to disavow his connection with the corporation, or fails to repudiate an unknown, unsuspected, and unauthorized use of his name, when will his responsibility cease? Taking no part himself, to what extent will he be responsible for the good faith of steps taken by others in perfecting the organization? It is said "that the office of corporator disappears when that of stockholder is taken on." But suppose the corporator takes no stock, and another does, and becomes thereby liable under the statute, does the liability of the corporator cease, or is it necessary that one-half or more of the stock shall have been taken, and the required payment in cash made besides, before he can be released? Suppose the entire stock to have been taken by responsible, or say by irresponsible, subscribers, and directors and other officers to have been elected, but the necessary amount of cash not paid in, would the corporator who had taken no stock still be responsible? And, if compelled to pay an obligation for which stockholders were also liable, what right of contribution would he have against them, their liability being under the statute and his arising out of contract?' The case may be stated in another way: This statute authorizes two classes of corporations, one with and the other without capital stock. The articles which the plaintiff in error signed provided for capital stock and for the admission to membership of any who should subscribe for and become owner of one share or more of the stock. The first meeting of the stockholders could be called only when one-half of the stock or more had been subscribed. Notice of that meeting was required to be given to stockholders, but not to incorporators. Directors or other officers could be elected only by the stockholders. No stock was ever subscribed for, and no directors or other officers

were ever elected. Only directors or other officers chosen and empowered to do so could make corporate contracts, beyond subscriptions to stock, and other steps necessary to complete the organization. The assumption by Moe and Williams to represent the corporation as directors or otherwise was therefore a sheer usurpation, and the contracts which they made in the corporate name, being totally unauthorized, were void as against the corporation, and bound nobody but themselves. This interpretation gives coherency and completeness to the statute, which imposes individual liability upon stockholders only. There was no necessity for doing more, because in such cases, without stockholders, there could not be a corporation with agents authorized to bind it; and for cases of attempts, like the one under consideration, to contract in the name of a corporation, without authority to bind it, there was no necessity to make provision, because all actually engaged in such an attempt are responsible on common-law principles, and no one who was not party to the attempt ought in good conscience to be made responsible by statute, or be so held by the courts on grounds outside of the statute. If the articles of incorporation in question had expressly forbidden the transaction of business with any other than its members until at least one-half of its capital stock had been duly subscribed and at least 20 per centum thereof paid in, it would hardly be contended that two of the signers, without the consent of the third, could bind him by contracts made by them in the corporate name. But the prohibition is in the statute, and the plaintiff in error is entitled to the benefit of it just as if it had been repeated in the articles which he subscribed. Ordinarily, the signer of articles of incorporation becomes a member or shareholder by the act of signing, and if it were conceded in such cases that the subscriber to the articles should be presumed to have participated or had an interest in business done in the name and within the scope of the organization, it would be only a prima facie presumption. McHose v. Wheeler, 45 Pa. St. 32. But, whether conclusive or only prima facie, it could have no application in a case like this, where the corporator could not be a member or have a legal interest until he had taken stock, which he could do or not, at pleasure, and where, though the preliminary organization of the corporation was complete, a valid corporate contract could not be made, because stock had not been subscribed and paid in to the amount required, and directors or other officers with authority to act had not been chosen.