SWENEY BROTHERS, Appellants, v. D. L. TALCOTT, *et al.*, Appellees.

Corporations: ORGANIZATION: SUBSCRIPTION TO STOCK: INDIVIDUAL LIABILITY OF STOCKHOLDERS. Chapter I of title IX of the Code, providing that corporations organized for pecuniary profit shall, before commencing business, adopt articles of incorporation fixing the highest amount of indebtedness to which the corporation shall at any time be subject, and providing further, that a failure to substantially comply with the provisions of said chapter in relation to organization shall render the individual property of stockholders liable for corporate debts, does not require that the whole amount of the capital stock authorized by the articles of incorporation shall be subscribed to before the corporation may begin business, when the articles provide that the corporation may do so when a less amount therein stated is subscribed; and the individual property of the stockholders of a corporation, whose articles so provide, cannot, on such account, be held liable for the debts of the corporation, though the published notice of incorporation recite simply the amount of the capital stock authorized, and that the same is to be paid for by subscribers in such times as the company might thereafter determine.

2. ——: ——: ——: EVIDENCE. The shares of the corporation in question were of the par value of fifty dollars each, and it was authorized to do business when capital stock to the amount of five hundred dollars was subscribed and paid in. The evidence showed that at the time of dissolution eight hundred dollars of the capital stock of the corporation had been paid in, and that only six shares had been subscribed since the date of organization. *Held*, that the evidence warranted the conclusion that stock to the amount of five hundred dollars was subscribed and paid in when the articles of incorporation were signed.

3. ——: ——: ——: ——. Where a corporation is entitled by
its articles of incorporation to commence business upon a less amount
than the whole sum of its authorized capital stock being subscribed
and paid in, and the provisions of such articles are complied with,
its stockholders cannot be held liable to the creditors of the corpora-
tion for the amount of the authorized capital stock not subscribed to,
as for unpaid subscriptions.

*Appeal from Mitchell District Court.*—HON. JOHN C.
SHERWIN, Judge.

FRIDAY, MAY 13, 1892.

The plaintiffs bring this action in equity to charge
the defendants, D. L. Talcott, J. N. Cady, John
Torsleff, Thomas Wardall, Daniel Sheean, E. S. Fonda,
J. M. Demaray, W. L. Eaton, and F. H. True as stock-
holders in a corporation called the "Mitchell County
Creamery," with a balance claimed to be due upon a
certain judgment in favor of the plaintiffs entered on
confession against the Mitchell County Creamery upon
a promissory note of that corporation, upon which the
defendants Sheean, Torsleff, and Fonda were sureties.
The defendants other than Sheean and Fonda answered
jointly. Sheean answered separately. Sheean and
Fonda joined in demanding certain relief as against the
other defendants, and Fonda, for himself, asked certain
relief as against Sheean. The plaintiffs having replied,
the case was tried to the court, and upon the conclu-
sion of the plaintiffs' evidence the defendants other
than Sheean and Fonda filed their motion to dismiss,
which was sustained as to the defendants Torsleff,
Demaray, Wardall, Eaton, True, J. N. Cady, and E.
V. Cady, to which plaintiffs and Sheean excepted, and
from which the plaintiffs appeal.—*Affirmed.*

*J. H. Sweney*, for appellants.

*F. F. Coffin*, for appellee Torsleff. *C. D. Ellis* and
*T. B. Sheean*, for appellee Sheean. *W. L. Eaton* and
*L. M. Ryce*, for other appellees.

GIVEN, J.—I. This appeal being by the plaintiffs from the ruling on the motion to dismiss their action because of the insufficiency of their testimony, the issues and claims for relief as between the defendants need not be further noticed. The issues between the plaintiffs and the defendants answering are as to the validity of the plaintiffs' judgment, and whether the defendants are chargeable therewith. The evidence shows to our entire satisfaction that the plaintiffs' judgment is valid, and that they are *bona fide* creditors of the Mitchell County Creamery to the amount of the balance thereof remaining unpaid. It also shows that the Mitchell County Creamery commenced business in 1880 as a corporation, and continued its business until about the first of January, 1883, when a receiver was appointed, and all its assets applied to the payment of its debts, leaving the balance due to the plaintiffs unsatisfied.

II. Numerous authorities are cited, confirming the well-established doctrine that stockholders in a corporation may be charged with the debts of the corporation under section 1068 of the Code, when there has been a failure to comply substantially with the requirements of the Code as to organization or publicity, or when they are indebted for unpaid stock. The plaintiffs seek to charge these defendants upon both grounds, and our inquiry is whether there is evidence to sustain either. The principal and controlling facts upon this branch of the case are found in the articles and notice of incorporation, and the testimony of Mr. Torsleff, the secretary, and the record of the proceedings of the stockholders.

On April 17, 1880, all the defendants except True and Eaton duly signed and acknowledged articles of incorporation as follows, which were duly filed for record June 15, 1880.

"Articles of incorporation of Mitchell County Creamery, of Mitchell county, Iowa. The subscribers. do hereby associate themselves under the general laws. of the state of Iowa, relating to corporations for 'pecun-- iary profit,' and do for themselves, their successors and. assigns, adopt the following articles of incorporation: Article 1. The name of this company shall be the Mitchell County Creamery. Art. .2. This corporation shall commence on the seventeenth day of April, A. D. 1880, and shall continue twenty years, with the right. of renewal, unless sooner terminated by a two-thirds vote of the stockholders. Art. 3. The objects of said corporation shall be the manufacture of butter, and do any other business pertaining to the business of a creamery. Art. 4. The principal place of business of their company shall be at Osage, Mitchell county, Iowa. Art. 5. The capital stock of this company shall be three thousand dollars, divided into shares of fifty dollars each. Five hundred dollars shall be paid at the time of signing these articles, and balance to be paid when ordered by company; a two-thirds vote being necessary to make an assessment. Art. 6. The affairs. of this company shall be managed by the company through their officers, the president, secretary and treasurer, a majority of whom shall constitute a quorum for the transaction of business. The officers. to be elected annually, on the first Monday in February, except the year ending February, 1881, when Daniel Sheean shall be president, Dwight L. Talcott, secretary, and E. S. Fonda, treasurer. Art. 7. The shares of the stock of this company shall be transfera-- ble only on the books of the company, in the manner provided by law. Each stockholder shall be entitled to as many votes at any meeting as he owns shares of stock, with assessments all paid up. Art. 8. The private property of the stockholders shall not be liable for, and shall be exempt from, corporate debts. Art..

9. The greatest amount of indebtedness to which the corporation may at any time subject itself shall not exceed three-fifths of the stock actually subscribed for. Art. 10. The company may be dissolved at any meeting called for that purpose, by a three-fourths vote of all the stockholders entitled to vote. Art. 11. The company can sue and be sued, make contracts, acquire and transfer property, both real and personal, in its corporate name, the same as any private individual. Art. 12. This company shall make and establish all such by-laws, rules and regulations as they may deem necessary for the government of their own body, and for the good and safe management of the company. Art. 13. These articles may be changed, altered and amended at any authorized meeting by a vote of the stockholders representing a majority of the stock. Art. 14. Stockholders' must vote in person, and cannot vote by proxy. In witness whereof, we, the stockholders, have hereunto affixed our names this seventeenth day of April, 1880, at Osage, Iowa.

"[Signed.]                "DANIEL SHEEAN,
                          "E. V. CADY,
                          "JOHN TORSLEFF,
                          "J. M. DEMARAY,
                          "H. H. BOWMAN,
                          "D. L. TALCOTT,
                          "J. N. CADY,
                          "E. S. FONDA."

A notice as follows was also published as required by law, and is conceded to be complete as to form and publication:

"Notice is hereby given that a corporation has been formed under chapter 1, title 9, of the Code of Iowa, at Osage, Mitchell county, Iowa, for pecuniary profit, under the name of the Mitchell County Creamery. The general nature of the business to be transacted

1. CORPORATION: organization: subscription to stock: individual liability of stockholders.

is the manufacture of butter. The amount of capital stock authorized is three thousand dollars, divided into shares of fifty dollars each, the same to be paid for by subscribers in such sums and at such times as the company may hereafter determine. The company to commence business at date of this notice, and continue and endure for twenty years, with the right of renewal, unless sooner terminated by a vote of the stockholders representing three-fourths or more of the stock of said company. The affairs of this company are to be conducted by the company through its officers, viz., president, secretary and treasurer; the officers to be elected annually on the first of February each year, and until the day of election, 1881, the officers of the company shall be Daniel Sheean, president, Dwight L. Talcott, secretary, E. S. Fonda, treasurer. The highest amount of indebtedness to which the corporation shall subject itself at any one time shall not exceed three-fourths of the capital stock subscribed. Private property to be exempt from corporate debts. Osage, Iowa, April 17, 1880.

"DANIEL SHEEAN, Pres.
"DWIGHT L. TALCOTT, Sec.
"E. S. FONDA, Treas."

It does not appear that any stock book was kept, and the following is the only evidence as to when stock was taken and paid for. In the minutes

2. ——:——:——: evidence. of the proceedings of the stockholders at a special meeting, May 29, 1880, at which Sheean, Fonda, Torsleff, Talcott, E. V. Cady and J. N. Cady were present, "motion made and carried that the capital stock be opened for subscription to the present stockholders. Each one present subscribed to one share." At a meeting September 6, 1880, a like motion was carried, and "J. M. Demaray subscribed for one share." Mr. Torsleff, who was secretary of the company, testifies that at a meeting held February 6, 1882, sixteen shares were assumed to be represented

as follows:   Sheean, two;  Fonda, two;  True, one;
Eaton, one;  Talcott, two;  Demaray, two;  Wardall,
one; J. M. Cady, two; E. V. Cady, one; Torsleff, two,
—and that these sixteen shares (eight hundred dollars)
were all the capital stock ever paid in.

The appellants contend that there was a failure to
comply with the requirements of the Code in relation
to organization, for that the amount of capital stock
authorized in the articles and notice had not been sub-
scribed, nor five hundred dollars paid in, as required
by article six.   Code, section 1068, provides that "a
failure to comply substantially with the foregoing
requisitions in relation to organization and publicity
renders the individual property of the stockholders
liable for the corporate debts."   "The foregoing requi-
sitions in relation to organization" are as follows:
"Previous to commencing any business, except that of
their own organization, they must adopt articles of
incorporation, which must be signed and acknowl-
edged by the incorporators, and recorded in the office
of the recorder of deeds of the county where the prin-
cipal place of business is to be.   *   *   *   Such articles
of incorporation must fix the highest amount of indebt-
edness or liability to which the corporation is at any
one time to be subject, which must in no case, except
in that of risks of insurance companies, exceed two-
thirds of its capital stock."   See Code, sections 1060,
1061.   It is not required, as a condition precedent to
complete organization, that all the capital stock author-
ized shall be taken.   It more frequently occurs that
subscribers of a portion of the stock form and organize
the corporation among themselves, and afterwards place
the undisposed of stock.   Such a condition is, however,
precedent to the right to commence business and incur
debts, unless it is provided in the articles that the cor-
poration may do so when a specific amount of stock is
subscribed.   Morawetz Private Corporations, sections

29, 140, 408; *Railway Co. v. Wellington*, 113 Mass. 79. The fact that all the stock was not subscribed was not a failure to comply substantially with the requirements in relation to organization and publicity.

III. The purpose, in part at least, of requiring the articles to be recorded, and the notice published, is for the information of those dealing with the corporation. By these articles and this notice the public were informed of the amount of capital stock authorized, the amount required to be paid in at the time of signing the articles, and the limit of indebtedness. In the absence of any showing to the contrary, we must infer that at least ten shares were taken and five hundred dollars paid in, as required by article 5. Seven of the eight persons who signed the articles then and thereafter assumed to be stockholders, and are shown to have been such by the testimony of Mr. Torsleff. Mr. Bowman, who signed the articles, does not appear to have taken any stock, and is not made a defendant. Five additional shares were taken at the meeting May 29, and one share September 6, making the sixteen shares taken and paid for. The reasonable conclusion from this evidence is that five hundred dollars was paid in at the time the articles were signed, and that the corporation was then not only organized as required by law, but was authorized to commence business and incur debts, upon filing its articles and publishing notices. It was surely apparent to any one who examined the articles that the corporation was to commence business upon a paid-up capital of five hundred dollars. Authorities are cited to show that persons dealing with the corporation had the right to assume that it owned available assets to the amount of the capital stock. Such is not the case where the articles show differently, as in this case. We are of the opinion that there was no failure to comply substantially with the requisites in relation

to organization or publication, such as to render the individual property of the stockholders liable for the corporate debts, under section 1068 of the Code.

IV.   We now inquire whether the defendants, or either of them, are liable for unpaid stock.   The evidence shows that each has fully paid for all the shares of stock subscribed by him. The appellants' contention is that, having fixed the amount of capital stock, and having proceeded to do business and incur indebtedness without placing other than the sixteen shares, and without dividing it among themselves, they are jointly and severally liable for such debts.   This liability must rest upon the assumption that in such case they are subscribers to the undisposed of shares, and indebted therefor.   The authorities cited seem to sustain this view as applicable where there is no provision for commencing business on less than the authorized capital.   Such a rule does not apply where, as in this case, the public are informed by the recorded articles that only five hundred dollars are required to be paid in before commencing business. In this as in many other instances the incorporators could not know in advance what amount of capital would be necessary to successfully operate the business. They provided in their articles for commencing business on five hundred dollars, and for raising more funds as required by placing and assessing the stock. Such, we think, is the fair construction of the articles. It is not shown that there was any intentional fraud in the manner of organizing, and it is entirely clear that none of the defendants agreed to be bound for any other shares of stock than those taken and paid for.

We reach the conclusion that the plaintiffs have failed to show themselves entitled to the relief asked against any of the defendants, as stockholders.   As no relief is asked against those who signed the note upon which the judgment was entered as sureties, their liability is not considered.   AFFIRMED.