ADAM B. CROUCH *v.* JOS. P. GRAY.*

(*Knoxville.* September Term, 1926.)

Opinion filed November 20, 1926.

1. **CORPORATION FOR PROFIT. Organization. Capital stock. Provision to be made for.**

A corporation is proceeding unlawfully in doing its general business and incurring liabilities without having made provision for its capital stock, and in Tennessee, in the absence of any statutory provision, for doing business with less subscribed than the amount fixed in the charter, it is unlawful to so proceed until the capital stock fixed by the charter has been fully subscribed. (Post, p. 525.)

Cases cited: Railroad v. Parks, 86 Tenn., 560; Sweeny v. Railroad, 118 Tenn., 314; Green's, Brice's Ultra Vires quoted on page 279, in Eastern Products Corporation v. Tenn. Coal Iron & Railway Co., 151 Tenn. 239.)

2. **SAME. Same. Same. Insolvency. Liability of incorporators, or officers. Where capital stock is not fully subscribed.**

The mere fact that a corporation is found, thus proceeding unlawfully and must therefore be denied a recovery, does not necessarily lead to the conclusion that the officers, or stockholders, are individually liable. (Post, p. 535.)

Citing: and distinguishing from Eastern Product Corporation v. Tenn. Coal Iron & Railway Co., 151 Tenn., 259.

**Semble.** That the failure to secure subscriptions to capital fixed in the articles of incorporation, is not **of itself and alone** fatal to the creation of a corporation in the absence of statutory provisions to such effect.

---

*Failure to subscribe authorized capital as affecting corporations right to contract, see annotation in 40 A. L. R. 1483; 7 R. C. L., 590; 6 R. C. L. Supp. 454.

3. SAME. Same. Same. Same.

Those who conduct a corporate business for profit, and incur debts, are not personally liable therefor, where the capital fixed in the articles of incorporation has not been fully subscribed, except where it is found that there is: (1) No corporation to be charged, (2) fraud, or (3) express statutory provisions therefor. (Post, p. 536.)

4. SAME. Same. Same. Individual liability.

The conclusions of different courts dealing with the question of individual liability, grouped. (Post, pp. 530-532.)

5. CASE IN JUDGMENT.

Facts show a lawfully created and organized corporation, good faith, payment of at least as much as fifty per cent of the capital stock fixed in the charter, no abandonment, but a good faith operation of the business as a corporation extending over a considerable period, and no charge of fraudulent misrepresentation, coupled with the additional consideration that the suing creditor had dealt throughout the corporate existence with the corporation as such. (Post, p. 536.)

Cases cited: Reynolds Tobacco Co. et al. v. Staples & Dyer, Washington Equity; and Eastern Products Corporation v. Tenn. Coal Iron & Railway Co., 151. Tenn., 259; 1 Fletcher on Corporation, pp. 607-608; Smith v. Ins. Company, 14 Fed., 399; Ward-Truett-Co. v. Bryan & Lamb, 144 Ga., 769; Central Bank v. Sheldon, 86 Kan., 460; Walton v. Oliver, 49 Kan., 107, 33 Am. St. Rep., 355; 1 Cook on Corporations (8 Ed.), par. 243; (1) Wechselberg v. Bank, 64 Fed., 90, 97; Farmers Trust Co. v. Floyd, 47 Ohio, 525, 12 L. R. A., 346; Meyer v. Brunson, 104 S. C., 84, 88 S. E., 351; Cunningham v. Shelby, 136 Tenn., 176; Morton v. Hart, 88 Tenn., 427; Coalter v. Bargamin, 99 Va., 65; Johnson v. Kessler, 76 Iowa, 411; Nat'l. Bank v. Texas Ins. Co., 74 Tex., 421; Am. Mirror Co. v. Bulkley, 107 Mich., 447; (2) Burnham v. Lutz, 8 Kan. App., 361; Wakeman v. Dalby, 51 N. Y., 27, 30; Detroit, etc., Wks. v. Riverside St. Ry., 29 S. W. (Tex.), 412; Burns v. Beck, 83 Ga., 471; Haslett v. Wotherspoon, 1 Strob Eq., 209 (S. C.); Bank v. Almy, 117 Mass., 476; Cummings v. Winn, 89 Mo., 51; Hill v. Stetler, 127 Pa. St., 145; Cruse v. Babcock, 51 Mass., 525; Kent v. Clark,

181 Ill., 237; (3) Schaub v. Coffin, 135 Mich., 435; Robinson v. Bank, 98 Tex., 184; Brooke v. Day, 129 Ga., 694; Am. Rad. Co. v. Kinnear, 56 Wash., 210; (4) First Nat'l. Bank of Salem v. Almy, 117 Mass., 476; Cummings v. Winn, 89 Mo., 51; Walton v. Oliver, 49 Kan., 107, 30 Pac. 172, 33 Am. St., 355; (5) Wechselberg v. Four City Nat. Bank, 64 Fed., 90; Spokane v. Amsterdamach Trustees Kantoor, 22 Wash., 172, 60 Pac., 141; Farmers C-Operative Trust Co. v. Floyd, 47 Ohio St., 525, 26 N. E. 110, 21 Am. St., 846, 12 L. R. A., 346; Snider's Sons' Co. v. Troy, 91 Ala., 224, 11 L. R. A., 515; Singer, etc., Co. v. Peck, 9 S. D., 29; Moe v. Harris, 172 N. W., 494 (Minn., 1919); Williams Co. v. Leong Sue Ah Quin, 186 Pac., 401 (Cal., 1919); Sweeny v. Talcott, 85 Iowa, 103; Thorton v. Balcom, 85 Iowa, 198; Keener on Quasi-Corporations; Anson on Contracts (6 Ed.), 7; 109 U. S., 285; Baldwin's Bouvier's Dict., 228; Harriman on Contracts, 24; Leake, contra, 36; 2 Burr, 1005; 11 L. J. C. P., 99; 8 C. B., 541.

*Headnotes 1. Corporations, 14 C. J., section 155; 2. Corporations, 14 C. J., section 155; 3. Corporations 14 C. J., sections 155, 1518, 1526, 1528, 1530, 1532; 4. Corporations, 14 C. J., sections 1497, 1535; 5. Corporations, 14 C. J., section 1514 (Anno); 6. Fraud, 26 C. J., section 44; 7. Contracts, 13 C. J., section 8.

---

FROM WASHINGTON.

---

Appeal from Chancery Court of Washington County to Court of Appeals, and by *certiorari* to Supreme Court. —HON. HAL H. HAYNES, Chancellor.

MILLER & WINSTON, for appellant.

BARNES & LEWIS, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Wautauga Ice Cream Company was duly incorporated in this State in August, 1921, with a capital stock fixed in

the charter at $12,000. After organization and election of officers a creamery plant, formerly owned and operated by one of them, was acquired by the corporation at an agreed valuation of $6000, in exchange and payment for an equivalent amount of the capital stock. The record shows that the plant property so acquired was needed for the corporate business and that it was not reasonably valued. The defendant was one of the incorporators, and at the time of the filing of this bill a director and the President of the corporation.

Complainant was the landlord of the corporation, and during the two years of its operation collected rent for his premises from the corporation, paid from time to time by its checks. There is no evidence of fraudulent misrepresentations inducing credit from him. Upon the bankruptcy of the corporation, after two years of operation, complainant brings this suit against the defendant, as an officer of the corporation, seeking to enforce individual liability against him for a balance of unpaid rent upon the ground that the capital stock fixed in the charter had not been fully subscribed.

The Chancellor denied relief. The Court of Appeals reversed the Chancellor and held the defendant liable. Writs of *certiorari* and *supersedeas* have been granted and the cause is before this court for review. The Court of Appeals has decreed liability on the ground that until the entire capital stock fixed by the charter had been subscribed the corporation was not authorized to proceed with the general business for which it was chartered, and that those individuals who did business in the corporate name incurred individual liability for the corporate debts.

Two cases recently decided by this court are referred to and relied on to support this holding, the unreported case of *Reynolds Tobacco Co. et al.* v. *Staples & Dyer,* Washington Equity, and *Eastern Products Corporation* v. *Tenn. Coal Iron & Railway Co.,* 151 Tenn., 259. In the first of these it was found that the concern purporting to do business as a corporation had never become incorporated. It appeared that less than the five requisite names had been signed to the application for the charter—a fatal defect going to the existence of the corporation. While it appears that the Chancellor found also that there was a lack of provision for capital stock, and in his memorandum expressed the opinion that either of these infirmities was fatal, it does not appear that this court did more than affirm the decree of the Chancellor in general terms, without specific reference to or discussion of the second ground; and whatever may have been otherwise the scope and effect of the holding of this court in the Eastern Products case, supra, this court in that case clearly repudiated the doctrine that the obtaining of subscriptions to the capital stock is a condition precedent to the legal existence of the corporation. On page 279 of the opinion it was expressly stated that this court does not subscribe to that proposition. With much emphasis the writer of that opinion stressed the distinction between the denial of the legal existence of a corporation, and the denial of the right of the corporation, on grounds of public policy, to proceed to create obligations before having made provision therefor in the form of stock subscriptions. This distinction is vital and is supported by quotations from numerous textbooks and decisions, referred to in that opinion, and in so far as the holding of the

Court of Appeals may be construed to rest upon the proposition that there was no corporation and that *therefore* those doing the business incurred individual liability, it is unsupported by that opinion and is apparently without substantial textbook or decision support otherwise. None of the decisions examined go to the extent of holding that the failure to secure subscriptions to the amount of the capital fixed in the articles of incorporation is *of itself and alone* fatal to the creation of a corporation, in the absence of statutory stipulations to such effect.

However, while apparently recognizing the distinction above referred to, the learned Court of Appeals, giving application to the declaration of this court in the Eastern Products case that, although fully existing as a corporation, the capital stock fixed in the charter must be fully subscribed before the corporation can *lawfully* proceed with its general business, reaches the conclusion that, if the business is proceeded with without subscription in full of the capital stock, the officers and directors become individually liable for the debts created. No such question was presented or discussed in the Eastern Products case and no such holding was announced. This court in that case went so far only as to refuse, largely on grounds of public policy, to enforce an executory contract of a corporation with a capital fixed in its charter at $2,000,-000, when only $800 thereof had been paid or subscribed, which contract involved a liability of approximately a half million dollars on the part of the corporation. It was neither held that individual liability attached to the officers of the corporation, nor that a corporation without fully paid or subscribed stock was not itself bound for

its debts, nor that it might not enforce a contract which had been executed on its part. Whatever may be the liability effect on the incorporators or officers of proceeding with the general business and creating obligations prior to the obtaining of stock subscriptions, it is clear that no determination of this question was had in that case, nor has this precise and important question heretofore been decided by this court.

In the Eastern Products case, having found, as above indicated, that practically no stock had been subscribed as a basis for credit in substitution of individual liability, and finding that the authorities in this country were practically agreed that corporate business should not be proceeded with until this condition *subsequent* to incorporation had been complied with, the holding of this court was that it would refuse in equity to enforce a purely executory contract. This was by analogy to the refusal of our courts to enforce a contract at the instance of a corporation which was proceeding to do business without the license required for any specific business, such as our statutes exact for the doing of a real estate business, or of a loan business under the Act of 1925. In other words, *neither an individual nor a corporation,* however completely organized and existent, may enforce rights in the courts when proceeding in disregard of our statutes, or against public policy. However, as before indicated, the opinion in Eastern Products case, expressions quoted therein from Mr. Justice LURTON in *Railroad* v. *Parks,* 86 Tenn., 560, and from Mr. Justice BEARD in *Sweeney* v. *Railroad,* 118 Tenn., 314, and other decisions of this and other courts; and copious excerpts directly in point from textbooks, are undoubtedly authority for the proposition

that a corporation is proceeding unlawfully in doing its general business and incurring liabilities without having made provision for its capital stock; and, in Tennessee, in the absence of any statutory provision for doing business with less subscribed than the amount fixed in the charter, it is held to be unlawful to so proceed until the capital stock fixed by the charter has been fully subscribed. See directly on this point quotations from Green's Brice's *Ultra Vires* found in the opinion in the Eastern Products case, beginning on page 279.

But, the question now squarely presented for the first time in Tennessee is whether or not *individual liability is incurred by the incorporators or officers* when the business of the corporation is proceeded with thus unlawfully.

An examination of the textbooks and authorities outside of Tennessee reveals some confusion on this subject. For example, it is said in 1 Fletcher on Corporations, pages 607, 608, that incorporators will be held liable individually for debts where no stock has been subscribed. (However, this is not upon the ground that this failure destroyed the validity of the incorporation—that there was no corporation to be bound—for on page 605 of the same volume it is expressly stated that the existence of a corporation cannot be attacked on the ground of failure to subscribe stock, which is very properly held to be a condition subsequent.) In support of his text to the effect that individual liability results where no stock is subscribed, this learned author cites four cases, *Smith* v. *Ins. Co.,* 14 Fed., 399; *Ward-Truett Co.* v. *Bryan & Lamb,* 144 Ga., 769; *Central Bank* v. *Sheldon,* 86 Kan., 460; and *Walton* v. *Oliver,* 49 Kan., 107, 33 Am. St. Rep., 355. Neither of these cases when analized sustain the

general statement found in the text.  In the Ward-Truett
case the court found that there was never any proper or-
ganization of the corporation and that a former partner-
ship liability continued.  In the Central Bank case it was
held that the incorporation of the Company was never
completed—no meeting, no officers, no books and no stock
subscribed.  In the Walton case, while the fact that there
had been no subscriptions was strongly stressed, and it
was stated that "we do not understand that a corpora-
tion can proceed to the transaction of business without
any portion of its capital stock being subscribed or paid,"
it was found that no complete organization had been had,
no officers and no books.  It will be observed that in all
three of these cases individual liability was rested upon
the proposition that *there was no corporation*—a propo-
sition not applicable to the instant case.  In the Smith
case, while the court expresses the opinion that it does
not doubt that individual liability results when in corpo-
rators commence business before there has been any
capital stock paid in which could be liable for the debts
of the company, the court appears to treat the corpora-
tion as not "fully organized."  But the suit was dis-
missed on the ground that it had been brought against
the corporation and certain incorporators as a joint ac-
tion.  There was therefore no final decision of the perti-
nent question, and while the expression of the court would
seem to support the theory of individual liability until
stock had been subscribed, this appears to have been
predicated upon the proposition that the corporation was
not completely in being.

On the other hand, in 1 Cook on Corporations (8 Ed.)
par. 243, it is said that stockholders and directors are

*not* liable personally when subscriptions have not been taken to the amount fixed, and numerous authorities are cited in the very full note. A review of the cases cited by Mr. Cook, and others elsewhere found, suggest a grouping of the authorities dealing with this question of individual liability under several heads:

(1) It is universally held that wherever there has been a failure to bring the corporation fully into existence, authorities differing as to essentials in this respect, those proceeding with the business become individually liable for the debts created, upon the general ground, recognized in this State and elsewhere, that having no principal to bind, the parties acting bind themselves. *Wechselberg* v. *Bank,* 64 Fed. 90, 97.; *Farmers Trust Co.* v. *Floyd,* 47 Ohio State, 525, 12 L. R. A., 346; *Meyer* v. *Brunson,* 104 S. C., 84, 88 S. E., 351. This is the principle underlying the holding of this court in *Cunningham* v. *Shelby* 136 Tenn., 176, it being applied in that case to parties doing business in this State in the name of a noncomplying foreign corporation, as had formerly been held in *Morton* v. *Hart,* 88 Tenn., 427. There was *no corporation* in Tennessee. On the other hand, cases cited hold directly that the corporation was complete without subscriptions to stock and deny liability because the debt was solely a corporate debt; among these are *Coalter* v. *Bargamin,* 99 Va., 65; *Johnson* v. *Kessler,* 76 Iowa, 411; *Nat'l Bank* v. *Texas Inv. Co.,* 74 Tex., 421; *Am. Mirror Co.* v. *Bulkley,* 107 Mich., 447. In the latter case, after distinguishing several decisions relied on to sustain individual liability, and concluding that they were not in point, resting either upon fraud or express statutes, the court says: "The sole question presented to us now is,

can a stockholder, whose ordinary contract is to pay the
par value of his shares, and who has paid it, be held lia-
ble to creditors of the corporation for its unissued stock,
without any allegation or showing that he either sub-
scribed for or purchased his stock with knowledge or in
furtherance of a fraudulent scheme to organize and carry
on an illegal corporation? We find no authority, and we
see no reason, to support such a proposition. It seems
to us contrary to the principles of justice and equity.''

(2)   A second class of cases are those in which the con-
duct of the parties has been so flagrant as to support the
finding of the courts that it constituted a fraud upon cred-
itors. To this class belong *Burnham* v. *Lutz*, 8 Ken. App.,
361; *Wakeman* v. *Dalby*, 51 N. Y., 27, 30; *Detroit, etc.,
Wks.* v. *Riverside St. Ry.*, 29 S. W. (Tex.), 412, ($200,000
capital fixed and only one share subscribed by each), and
*Burns* v. *Beck*, 83 Ga., 471, in which case the statutory re-
quirement of a ten per cent subscription had been wholly
disregarded. So in *Haslett* v. *Wetherspoon*, 1 Strob. Eq.,
209 (S. C.), cited by COOK as holding contra to the rule of
non-liability he announces, the defendants were held
liable because they had falsely represented that the en-
tire capital stock was subscribed and paid in.

(3)   A third class of cases embraces those arising in
States having express statutory provisions making offi-
cers of corporations individually liable to creditors un-
til the stock has been subscribed or paid in. This was
the holding in *Bank* v. *Almy*, 117 Mass., 476; *Cummings*
v. *Winn*, 89 Mo. 51; *Hill* v. *Stetler*, 127 Pa. St., 145; *Cruse*
v. *Babcock*, 51 Mass., 525, 557; *Kent* v. *Clark*, 181 Ill.,
237, the statute in the latter State expressly providing
that directors are personally liable for debts incurred be-

fore all ''stock named in the articles of incorporation
shall be subscribed in good faith.''

(4)   There is a fourth class of cases in which liability
has been adjudged where, following the filing of articles
of incorporation, no capital stock is subscribed and the
incorporation is practically abandoned. *Schaub* v. *Coffin,*
135 Mich., 435; *Robinson* v. *Bank,* 98 Tex., 184; *Brooke*
v. *Day,* 129 Ga., 694. The principles controlling in these
cases are much the same as those applied in classes (1)
and (2) above.

(5)   Mr. COOK cites several decisions in jurisdictions
having statutory provisions like ours in requiring the
fixing of the capital in the charter—but with no *express*
requirement creating individual liability for proceeding
before stock is subscribed—directly denying individual
liability, such as *Am. Rad. Co.* v. *Kinnear,* 56 Wash., 210,
in which it is said: ''Cases may be found where officers
of corporations have been held individually liable to the
corporation creditors, because the capital stock of the
corporation was not subscribed, but these cases rest either
upon an express statute imposing individual liability in
such cases, or upon the ground that there is no corpo-
ration until the capital stock is subscribed. In *First Nat.
Bank of Salem* v. *Almy,* 117 Mass., 476, and *Cummings*
v. *Winn,* 89 Mo., 51, cited by the appellant, the liability
was based upon an express statute, and similar statutes
exist in many of the States. In *Walton* v. *Oliver,* 49
Kan., 107, 30 Pac., 172, 33 Am. St., 355, and *Wechselberg*
v. *Flour City Nat. Bank,* 64 Fed., 90, individual liability
was upheld on the ground that there was no corporation
to be bound. These decisions are not controlling here, for
our statute does not impose individual liability in express

terms, and subscription to the capital stock is not essential to the legal existence of a corporation. *Spokane* v. *Amsterdamsch Trustees Kantoor,* 22 Wash., 172, 60 Pac., 141. For the like reason *Farmers Co-operative Trust Co.* v. *Floyd,* 47 Ohio St., 525, 26 N. E., 110, 21 Am. St., 846, 12 L. R. A., 346, and other like cases, basing liability on excess of authority of corporate agents are inapplicable, for if the corporation is bound there is no excess of authority. The very fact that the appellant recovered judgment against the corporation affords conclusive evidence that the trustee in contracting the debt did not exceed their authority. For these reasons, there is no liability on the part of the respondents in the present case, unless their liability is fixed by the mere act of transacting business before the whole capital stock was subscribed. While there is some conflict of authority on this question the weight of authority denies individual liability in such cases, holding that the State alone may complain of the violation of its laws.''

In this well-considered opinion quotation is made from *Snider's Sons' Co.* v. *Troy,* 91 Ala., 224, 11 L. R. A., 515, in which the court strongly states reasons for denying liability in the absence of fraudulent intent and where the creditor understood that he was contracting the debt with the corporation as such. That court declares that the recognition of such a claim, ''defeats the corporate character of the contract, changes the relation from that of stockholders to that of partners; substitutes other and new parties to the contract, and effects the imposition of an enlarged liability, which they did not assume, but intended to avoid.

The opinion in *Singer, etc., Co.* v. *Peck,* 9 S. D., 29, deals squarely with the issue and denies liability. And so *Moe* v. *Harris,* 172 N. W., 494, (Minn., 1919) and *Williams Co.* v. *Leong Sue Ah Quin,* 186 Pac., 401 (Cal., 1919) likewise appear to deny liability. And see *Sweeny* v. *Talcott,* 85 Iowa, 103, and *Thornton* v. *Balcom,* 85 Iowa, 198.

Most of the States of the Union appear to have statutory provisions, lacking in Tennessee, authorizing the commencement of business when a specified amount less than the capital fixed in the articles of incorporation has been subscribed. And in some cases the parties proceeding before the statutorily specified minimum expressly required to be paid or subscribed is provided for are held individually liable, even in the absence of an *express* provision for such liability, such as is contained in the Illinois statute and in certain others.

It will be observed that in so far as the decisions examined go, recovery, unless based on a statute, or grounded on a finding of non-complete existence of a corporate principal to be bound, is confined to cases of deceit— fraudulent misrepresentation; and it may be here remarked that in a rather exhaustive review of the authorities no case has been found in which, on facts such as are here presented, individual liability has been adjudged—the facts in this case showing a lawfully created and organized corporation, good faith payment of at least as much as fifty per cent of the capital stock fixed in the charter, no abandonment, but a good faith operation of the business as a corporation extending over a considerable period, and no charge of fraudulent misrepresentation—coupled with the additional consideration that the suing creditor had dealt throughout the

corporate existence with the corporation as such. Of course, since there can be no doubt that the corporation in the instant case was bound on the obligation held by this creditor, individual liability may not be predicated upon the ground that the parties who dealt with him had no principal to bind.

Unquestionably a corporation may be so proceeding illegally—without license or otherwise—as to preclude its right of action in a given case, without resultant individual liability to those engaged in the incorporated business. The mere fact that the corporation is found to be proceeding unlawfully and must therefore be denied a recovery does not necessarily lead to the conclusion that the officers or stockholders are individually liable. Referring here again to the Eastern Products case, supra, it will be borne in mind that the incorporators and officers of the corporation making the contract in that case were conceded to be men of very large financial responsibility, and if the court had reached the conclusion in that case that the obligation of the corporation was supported by the individual responsibility of these officers and directors, as strenuously insisted for the complainant, much of the argument for the conclusion reached would have been without equitable support. The equitable ground of that holding was in large part that a contract creating a large obligation ought not to be enforced on behalf of a corporate party so obligated when individual responsibility had been evaded and no substitute had been provided.

The claim in this case does not appear to be made against the defendant on the ground that he *was a stockholder,* and there is no basis for such a predicate, whether

he happened to be a stockholder or not. Quite generally the measure of the liability of the stockholder as such is his contract of subscription. While in some of the authorities the word "stockholder" is used without proper discrimination, it will be found that the liability is never rested upon the fact that the party *has subscribed for stock,* except in those cases in which he has failed to comply with his subscription, but rather upon his failure to make provision for stock, either by his own or other subscriptions. *The basis of the liability is the participation in the incurring of the debts.* While on the face of the opinion in *Cunningham* v. *Shelby,* supra, correctly decided on its facts, this distinction is not made clear, an examination of the record in that case supports this view, and this was the extent of the liability adjudged.

It will be seen that the holding of the Court of Appeals in this case is practically without decision support—other than occasional *dicta* expressions. How and upon what principle can the doctrine be sustained that those who conduct a corporate business and incur debts are personally liable therefor unless the capital fixed in the articles of incorporation has been fully subscribed—except where it be found that there is (1) no corporation to be charged, (2) fraud, or (3) express statutory provisions therefor?

All actionable wrongs are either torts, contracts or crimes. If this demand may be held to be in tort, it must be based on deceit—fraudulent misrepresentation—and it is well settled that the element of will or intent is essential to such a charge. In the instant case there is no allegation of intentional deceit, which amounts to fraud. No crime is involved. May the demand be treated as

resting on contract? It must be conceded that there is no *express* contract; nor is there an implied contract *in fact*—as herein again, in final analysis, will or purpose must enter in. It is only under the heading of a contract, *quasi* in its nature, *implied by law,* that it could possibly be classed. Prof. Keener in his work on *Quasi*-Contracts draws this distinction and suggests that it embraces the doctrine that no one shall be allowed to enrich himself unjustly at the expense of another. See Anson on Contracts (6 Ed.), 7, 109 U. S., 285. "The question to be determined is not the defendants intention, but what in equity and good conscience the defendant ought to do." Baldwin's Bouvier's Dict., 228; Harriman on Contracts, 24. And the same authority (Bouvier, supra) has the following: "*Implied contracts* may be either implied *in law* or *in fact*. A contract implied *in law* arises where some pecuniary inequality exists in one party relatively to the other which justice requires should be compensated, and upon which the law operates by creating a debt to the amount of the required compensation; Leake, Contr., 38. See 2 Burr. 1005; 11 L. J. C. P., 99; 8 C. B., 541." However, it will be noted that this statement is followed by this illustration: "The case of the defendant obtaining the plaintiff's money or goods by fraud, or duress, shows an implied contract to pay the money or the value of the goods." Thus we come back to fraud as an essential element of the right to maintain individual liability, where there is a valid corporate principle to be bound.

No fraud being established in the instant case, for the reasons herein set forth the judgment of the Court of Appeals must be reversed and the suit dismissed.